HILL v. HILL et al.

No. 33388. Dec. 13, 1949.
Rehearing Denied March 7, 1950.

*215 P. 2d 553.*

Karl Cunningham, of Kingfisher, and W. A. Lybrand, of Oklahoma City, for plaintiff in error.

Shutler, Shutler & Bradley, of Kingfisher, for defendants in error.

LUTTRELL, J. This action was brought by plaintiff, James R. Hill, against the defendants Robert E. Hill and Alma F. Hill on July 6, 1942, to declare a deed conveying 40 acres of land in Kingfisher county to Robert E. Hill, and a conveyance of 160 acres of school land in said county, held by plaintiff under a contract of purchase,

to the same grantee, mortgages or conveyances as security only. The conveyances were absolute in form and were executed on December 30, 1931, and January 8, 1932, respectively. The alleged agreement between plaintiff and Robert E. Hill that they were given as security was oral. Alma F. Hill, the wife of Robert E. Hill, was the grantee in a conveyance of the school land made by Robert E. Hill to her. It was alleged that she took with notice of the oral agreement. Robert E. Hill died after the action was filed and before trial, and the case was revived against Alma F. Hill as administratrix of his estate, and against his other heirs. The case was tried to the court without a jury, and the judgment of the trial court denied plaintiff the relief sought, and quieted the title to the 160 acres of school land in Alma F. Hill, subject to a judgment in favor of plaintiff and against said defendant for $927.10, on account of payments made by plaintiff to the School Land Department subsequent to the filing of this action. Plaintiff appeals.

Plaintiff in his second amended petition alleged that the conveyances of both the 40-acre tract of land and the 160 acres of school land were made to his brother, Robert E. Hill, as security only, to indemnify Robert E. Hill or save him harmless from liability assumed by him as surety and comaker on a note to the Capitol State Bank at Oklahoma City in the principal sum of $2,500, which note evidenced an obligation of James R. Hill to said bank, and that pursuant to the agreement between the parties, Robert E. Hill had the right to take charge of said lands, collect the rents and profits therefrom, pay all purchase installments, taxes, and other encumbrances against the land, with the right to sell said lands, or so much as might be necessary, to reimburse him for moneys which he might be required to pay on said note because of his signing the same as comaker and surety. He further alleged that Robert E. Hill had failed to pay said note or any part thereof, and that he, the plaintiff, was compelled to pay a balance due on the judgment to which said note had been reduced in order to satisfy the same. He also alleged that the 40-acre tract had been sold by Robert E. Hill, and that said defendant had never accounted for any part of the purchase price to plaintiff. He asked that the transfer of the school land be canceled and set aside for failure of consideration, and for an accounting for the rents and profits from both tracts of land and the purchase money received by Robert E. Hill from the sale of the 40-acre tract.

The defendants in their amended answer and cross-petition alleged that plaintiff and defendant and another brother, Frank M. Hill, had formed a partnership in 1929 for the purpose of buying and selling cattle; that Robert E. Hill, as part of the partnership agreement, advanced all necessary money for the purchase of cattle, with the understanding that his brothers were to give their time and efforts to the partnership against his contribution of money; that the partners were to share equally in the profits and losses of the partnership, and that at the termination of the partnership in 1931, their losses amounted to some $10,415, for which Robert E. Hill executed his note to the Capitol State Bank; that by reason of said losses plaintiff owed the defendant $3,471.97, which he was unable to pay; that James R. Hill, in addition to said debt, was indebted to Robert E. Hill in various other sums aggregating some $5,000 or more; that Robert E. Hill was also surety on plaintiff's note to the First National Bank of Kingfisher, Okla., in the sum of $2,500, and that plaintiff executed and delivered the conveyance of the 40-acre tract and the assignment of purchase agreement on the 160-acre school land tract to cover his part of the loss in the partnership transaction, the obligation to the First National Bank of Kingfisher, and the other indebtedness owing from him to Robert E. Hill. Defendants also

filed a counterclaim or cross-petition against plaintiff for $812.59, being the unpaid balance of the amount expended by Robert E. Hill to obtain his release from liability on a judgment against him on the Capitol State Bank note, and expenses incurred by him in defending the suit brought on such note. Alma F. Hill in her answer denied that the conveyances by plaintiff to Robert E. Hill were for security only, asserted that she was the purchaser of the 160-acre school land tract from Robert E. Hill for a valuable consideration, in good faith, and without notice of any claim on the part of plaintiff, and asked that the title to said property be quieted in her.

The first and principal contention made by plaintiff is that, under the evidence adduced in the trial court, plaintiff was entitled to judgment; in other words, that the judgment of the trial court was clearly against the tiff, Frank M. Hill testified that he weight of the evidence. For the plain-was one of the partners in the cattle deal; that under the partnership agreement Robert E. Hill was to pay for the cattle and pay for their feed and pasture, and was to receive one-third of the profits, if any, but that if a loss was incurred the entire loss was to be sustained by Robert. This was also testified by plaintiff's witness, Adam Kildow, upon whose place some of the cattle of the partnership was pastured. Frank testified that when the partners settled up in 1931, there was a loss of some $1,900. Adam Kildow testified on direct examination that Robert stated to him that he was taking some of James R. Hill's land as collateral in relation to some bank transactions with the Capitol Hill Bank at Oklahoma City. But thereafter, on redirect examination, he testified that Robert stated that he was taking the land for security, and that he, the witness, supposed that James owed a bank somewhere; that he didn't know and didn't know what bank it was with.

Frank M. Hill testified that before the 40-acre tract was deeded to Rob-

ert, Robert said he wanted some property settlement out of James, and that later Robert told him that he did get the 40 acres, and that that wasn't enough; that he, Frank, told Robert he believed James would give him a deed to the school land, and that James did deed it over to him later; that Robert said James didn't have the money to pay what he owed Robert, and that Robert said he wanted James to assign the land over to pay him for what indebtedness James couldn't take care of; in other words, that it was to take care of what James owed Robert.

Plaintiff also produced James R. Hill as a witness, but the trial court sustained an objection to his competency. Thereupon counsel made an offer of proof, all of which pertained to transactions between James and his dead brother Robert. Plaintiff also produced and offered the deposition of Fern E. Hill, the divorced wife of James R. Hill, who testified in her deposition that she and James were divorced in 1940, and that she and her husband deeded the 40-acre tract and the 160-acre school land tract to Robert as security on a note to a bank in Oklahoma City made by James and signed also by Robert. She further testified that she and her husband sold a farm near Kingfisher to pay off a note to the First National Bank at Kingfisher. Defendants objected to the competency of this witness and the objection was by the court sustained. Plaintiff also introduced a part of the testimony given by Robert E. Hill at the trial of an action brought against him by the Capitol State Bank, the testimony being given November 15, 1934, in which Robert testified that a certain indebtedness of $10,000 owing by him to the bank was for the purchase of some land in Texas and royalty in Oklahoma.

The defendants produced as a witness John W. Shofner, who was vice president of the Capitol State Bank, which was located in Capitol Hill in Oklahoma City, from February or March, 1929, to September, 1932. This

witness testified that he was advised, or understood, that the loss on the cattle in 1931 amounted to some $10,000, for which Robert made a note to the bank. He testified that Robert told him that he would have to stand the loss since James was in no position to pay, but that James had agreed to assign him 40 acres of land as his share of the partnership loss. He further testified that James, in June, 1932, made a payment of $100 on the note to the Capitol State Bank, and that James did not advise him that Robert was supposed to pay the note, although Robert E. Hill and Alma F. Hill were present at the time James made the payment. He also testified that he remembered a number of checks going through the bank made by Robert and payable to James, one of which was in the sum of $4,000.

Alma F. Hill testified that the cattle loss was around $10,000, and that James agreed to deed the 40 acres and the school land to Robert to pay for his share of such losses. She further testified that she was present when the partnership arrangement between the brothers was made, and that Frank and James were to pay the feed and pasture bills while Robert was to pay the purchase price of the cattle, and that the three were to share equally in the profits and losses of the partnership. She also testified that in addition to his part of the partnership losses and the obligation to the Capitol State Bank, James was indebted to Robert for various other sums advanced to him by Robert; that in the latter part of 1929 Robert loaned James $4,000 at one time, $500 at another time, and another $500, the date of which she could not remember, and that he advanced to James various other sums at different times, and that the conveyance of the two tracts of land was made by James to recompense Robert as far as James could for the amount of his indebtedness to Robert. She also testified that Robert was surety upon James' note to the Kingfisher bank, and that he paid some $1,300

upon that obligation, a part of which was the profit derived by Robert from the sale of the 40-acre tract, which amounted to in excess of $900. She testified that at the time the 40-acre tract was conveyed to Robert there was a mortgage of $1,000 against it, and that at the time the school land was conveyed it was of the value of approximately $2,000, and that the payments due the state to complete the purchase of it aggregated around $1,500. She testified that the conveyances made by James to Robert were outright and absolute conveyances; that James said that the properties were all he had left; that she and Robert immediately took possession of the property and used and handled it as their own, and that shortly prior to the institution of this action Robert conveyed the school land property and other property to her to reimburse her for moneys of her own which she had loaned Robert and which he had used. She substantiated her testimony by producing in evidence checks made by Robert to James, and checks showing payments made by Robert for feed and pasture for the cattle, which she testified James and Frank were supposed to pay.

Alma F. Hill further testified that she was present in the Capitol State Bank when James made the payment on the note to the bank, thus substantiating the testimony of Shofner. She further testified that when the 40 acres were sold the net amount received by Robert was applied on the note at the Kingfisher bank. It appears from the record and from her testimony, that after the Capitol State Bank obtained judgment against James and Robert on the note, the bank became insolvent, and the banking commissioner sold the judgment to a third party; that Robert finally procured a release of the judgment against him by paying to such owner the sum of $633, and that he thereafter garnisheed the money coming to James from his father's estate and applied it upon the amount paid by him to get the release of that

judgment, and his expenses incurred in defending the action.

James F. Hill was adjudged insane on April 2, 1934, and was confined in the insane asylum until September 19, 1940, when he was restored to competency. Robert was adjudged insane on June 7, 1944, and died insane on August 27, 1945.

From the record it does not appear that James at any time sought an accounting from Robert of the money received from the sale of the 40-acre tract, or of the rents and profits from the two tracts of land. Robert made all payments to the School Land Department and paid all taxes and other sums in connection with the tract up to 1943.

The trial judge, in denying plaintiff the relief sought in so far as the cancellation of the transfer of the 160-acre tract and an accounting was concerned, stated that the burden was upon the plaintiff to establish that the deed and the transfer of the certificate of title was for security or indemnity only, and that such proof must be clear and convincing. He stated that in his opinion the plaintiff had failed to establish his case by clear and convincing evidence, and for that reason he denied the relief sought by plaintiff, except that he rendered judgment for plaintiff for the amounts paid to the School Land Department on the purchase price of the property, paid after the commencement of this action, in the sum of $927.10. The trial judge also, apparently for the same reason, denied the defendants any recovery under their counterclaim or cross-petition.

We have held numerous times that the burden of proving that a deed or conveyance absolute on its face is a mortgage is upon the plaintiff, and that the evidence to establish its character as a mortgage must be clear, unequivocal and convincing. Holly v. Holly, 174 Okla. 626, 51 P. 2d 527, and authorities therein cited. Dunaway v. Jayne, 187 Okla. 538, 104 P. 2d 561. When the evidence above set forth is considered in the light of the rule announced in the above cases, we think it is clearly apparent that the refusal of the trial court to grant either of the parties the relief sought by them was correct. The evidence is conflicting, and from the numerous financial transactions engaged in between the two brothers, James and Robert, it is impossible to determine in what amount James was indebted to Robert, or whether any of the sums which the defendants' testimony showed were advanced to James by Robert had been repaid prior to the bringing of this action. So far as the record shows they had not, nor does the record reflect that defendants ever attempted to collect them. The testimony of the witness Kildow that the tracts were given as security for the indebtedness to the Capitol State Bank is based solely upon the statement which he said was made to him by Robert, and the fact that long after the properties were conveyed to Robert, James paid interest upon said note, and that Robert, after buying his release from the judgment, attempted to collect the amount so paid from James, tends to negative the idea that Robert understood that the properties were held by him as security for the Capitol State Bank indebtedness. The fact that he paid the money derived from the sale of the 40-acre tract on the note to the Kingfisher bank also negatives the idea that he understood the money received from the properties was to be applied upon the Capitol State Bank indebtedness. While it is true that Robert testified in the suit brought against him by the bank that he borrowed from the bank some $10,-000 in order to buy land in Texas and pay for royalty in Oklahoma, his testimony is controverted by that of Shofner, and by the testimony of Alma F. Hill. When all these circumstances are considered with the spoken testimony of the witnesses, the evidence that the properties were conveyed as security for the payment of the Capitol State Bank indebtedness is far from clear, unequivocal and convincing. Plaintiff

does not contend that they were to secure any other indebtedness.

In Wilkerson v. Walker, 196 Okla. 618, 167 P. 2d 372, we said:

"In cases of equitable cognizance findings of fact by trial court are not conclusive on appeal, but appellate courts' judgment should not lightly displace judgment of trial court which had the advantage of observing witnesses. Noble v. Bodovitz, 175 Okla. 432, 52 P. 2d 1046. This is especially true where the evidence is conflicting, and the finding thereon will not be disturbed unless clearly against the weight thereof. Brown v. Investors Service Co. of McAlester, Okla., 182 Okla. 270, 77 P. 2d 566."

Plaintiff also contends that the trial court erred in refusing to permit James R. Hill to testify relative to transactions with his deceased brother. We are unable to agree with this contention. The witness was clearly disqualified to testify by the provisions of 12 O.S. 1941 §384. Plaintiff urges that Alma F. Hill was in fact a principal and that plaintiff was a competent witness as against her. But the evidence shows that all the transactions sought to be testified to by plaintiff were transactions with Robert E. Hill, and while Alma F. Hill testified that she to some extent assisted her husband in looking after his business, it is far from establishing that she was either a principal or agent in these transactions. Her interest in the property involved in this litigation was that of grantee of Robert E. Hill, and as administratrix of his estate. The decisions in Lieuallen v. Young, 115 Okla. 153, 241 P. 342, and in Anderson v. Abbott, 192 Okla. 647, 138 P. 2d 545, are inapplicable to the situations here presented.

Plaintiff also contends, and we think correctly, that the trial court erred in refusing to admit in evidence the deposition of Fern E. Hill, the divorced wife of James R. Hill.

In Hafer v. Lemon, 182 Okla. 578, 79 P. 2d 216, we said that the competency of the witnesses depended upon the relationship of the parties at the time of the trial, and that the application of the statute (12 O. S. 1941 §385) is relaxed if the marital relationship has ceased to exist prior to the trial.

But we think that even had the testimony of Fern E. Hill been admitted and considered by the trial court, it would not have changed the result. We have heretofore set her testimony out in the evidence and have considered it as admitted in passing upon this appeal.

In Byrd v. McKoy, 183 Okla. 209, 81 P. 2d 315, we said:

"A judgment will not be set aside or new trial granted on appeal for the improper rejection of evidence, unless it appears from the entire record that the error complained of has probably resulted in a miscarriage of justice, or constituted a substantial violation of a constitutional or statutory right."

To the same effect is Mutual Life & Accident Association of Frederick v. Moore, 162 Okla. 260, 20 P. 2d 168. Under these authorities and the cases cited in them announcing the same rule, the error of the trial court in refusing to admit the deposition of Fern E. Hill is not reversible error.

The judgment of the trial court is not clearly against the weight of the evidence.

It appears from an application made to this court by plaintiff to amend the case-made, and the response thereto, that plaintiff may be entitled to recover an amount for taxes paid, and payments made by him to the Commissioners of the Land Office, in addition to the sum of $927.10, for which judgment was rendered in his favor by the trial court, which additional amounts may be determined from the public records. In order to effectuate justice as to this phase of the case, the trial court is directed to permit plaintiff to offer such further evidence, and to render such further judgment in this regard, as the evidence warrants.

Affirmed.

DAVISON, C.J., and WELCH, CORN, GIBSON, HALLEY, JOHNSON, and O'-NEAL, JJ., concur.