LITTLE et al.

v.

ECHOLS et al.

No. 35067.

Supreme Court of Oklahoma.

June 9, 1953.

Rehearing Denied June 30, 1953.

Application for Leave to File Second Petition for Rehearing Denied May 11, 1954.

Goins & Smith, Ardmore, for plaintiffs in error.

Robinson & Oden and Robert B. Harbison, Altus, for defendants in error.

PER CURIAM.

Quintin Little and Thomas Warren Wheatley, Sr., as plaintiffs, brought this action against the defendant, Allen K. Echols and others, to quiet title to the North Half (N½) of Section Seven (7), Township One (1) North, Range Twenty-One (21) West, Jackson County, Oklahoma. The parties will be referred to as they appeared in the trial court.

. Plaintiffs alleged that. Thomas Warren Wheatley, Sr., hereinafter called Wheatley, was the owner of said land, subject to oil and gas leases held by the plaintiff, Quintin Little, which the latter had acquired through and under Wheatley. Plaintiff Wheatley claimed that he had acquired title to said land under a warranty deed dated October 29, 1936, executed by his wife, Renna Mae Howell Wheatley, hereinafter called Mrs. Wheatley.

Defendants, by answer and cross-petition, alleged that the warranty deed alleged by plaintiffs to have been executed by Mrs. Wheatley, dated October 29, 1936, was not delivered to the plaintiff, Wheatley, and that such deed was not effective to convey title to Wheatley; that Mrs. Wheatley died intestate March 6, 1946, owning said land, subject to a one-half interest in the mineral rights reserved in deed of February 5, 1924, executed by W. H. Echols and wife to Mrs. Wheatley, as grantee, and that her interest in said land (surface rights and one-half of mineral rights) passed at her death one-half to the plaintiff, Wheatley, and one-half to the defendants, as her heirs; said defendants including three sons and a daughter of her deceased brother, Dr. J. W. Echols, a sister, Mrs. R. D. McAfee, now Mrs. Jack Williams, and R. E. Echols, Jr., a nephew of Mrs. Wheatley and son of her

deceased brother, R. E. Echols. As to the remaining one-half interest in the mineral rights, the defendants alleged that W. H. Echols, by deed of November 26, 1930, conveyed said one-half interest to Dr. J. W. Echols and Mrs. R. D. McAfee, and that said one-half interest in the mineral rights was owned by the three sons and the daughter of Dr. J. W. Echols, deceased, and Mrs. R. D. McAfee. Defendants prayed judgment determining their interest in land and for accounting as to rents.

It appears that the following facts are not in substantial dispute:

In the year 1922, Mr. and Mrs. Wheatley were married. At the time of such marriage, Mrs. Wheatley was a widow. On February 5, 1924, Mrs. Wheatley was the owner of an undivided interest (approximately forty-seven percent) in the land above-described, which she had acquired under the will of her former husband, Thomas A. Howell, who died in the year 1920. On February 5, 1924, Mrs. Wheatley's father, W. H. Echols, was the owner of the remaining interest in said land (approximately fifty-three percent), and on that date a warranty deed was executed by W. H. Echols and Maggie A. Echols, his wife, conveying to their daughter, Mrs. Wheatley, all of their interest in the above-described land, except a mineral interest specified in words as follows:

"except one half of Royaltie and leases Oil, Gas and other minerals until the sale of the land by party of the second part."

On November 26, 1930, W. H. Echols executed a warranty deed wherein Dr. J. W. Echols and Mrs. R. D. McAfee were named as grantees, conveying to them the following-described interest in said land:

"one half of all royalties and leases for Oil and Gas and other minerals on the North east Quarter and the North West Quarter being the north half of section seven (7) in township one (1) North of range twenty-one (21) west of Indian Meridian."

On October 29, 1936, Mrs. Wheatley signed and acknowledged before a notary public at McAlester a warranty deed, wherein her husband, the plaintiff, Wheatley, was named as grantee and covering the above-described land.

Dr. J. W. Echols, brother of Mrs. Wheatley, died March 22, 1937, survived by his widow, Fay Ann Echols, and four children, Allen K. Echols, Lillian Echols, J. Jack Echols, and Thomas Howell Echols. Fay Ann Echols died December 12, 1944, survived by her children above-named.

On January 11, 1946, suit was instituted in the District Court of Jackson County, Oklahoma, by Mrs. Wheatley, as plaintiff, to quiet her title to the land above-described. Her petition, alleging that she was the owner of said land on December 31, 1945, and that on that date she had executed a warranty deed to Jack L. Hughes, and that warranty deed dated November 26, 1930, from W. H. Echols to Dr. J. W. Echols and Mrs. R. D. McAfee, covering an interest in said land, constituted a cloud on Mrs. Wheatley's title, and praying judgment quieting her title. The living defendants named in the petition filed by Mrs. Wheatley were the same as those defendants named in the action brought by the plaintiffs, Wheatley, and Little, out of which this appeal arises, with the exception of R. E. Echols, Jr. On March 6, 1946, Mrs. Wheatley died intestate, a resident of Pittsburg County, Oklahoma, survived by her husband, the plaintiff Wheatley, and leaving no children. Mrs. Wheatley was also survived by her nephews, Allen K. Echols, J. Jack Echols, and Thomas Howell Echols, and her niece, Lillian Echols, children of her deceased brother, Dr. J. W. Echols, and by her sister, Mrs. R. D. McAfee, and by her nephew, R. E. Echols, Jr., son of her deceased brother, R. E. Echols. On March 15, 1946, after the death of Mrs. Wheatley, a dismissal was filed in the office of the Court Clerk of Jackson County in the above-mentioned quiet-title action brought by Mrs. Wheatley as plaintiff, such dismissal being signed by L. B. Yates, attorney of record for plaintiff, Mrs. Wheatley.

The above-mentioned warranty deed of October 29, 1936, from Mrs. Wheatley to the plaintiff Wheatley, was filed for record by Wheatley in the office of the County Clerk of Jackson County on March 18,

1946. Such deed had been in the possession of Wheatley from the date it was signed by Mrs. Wheatley, except for the period in which it was being recorded.

In the latter part of the year 1945, an attempt was made to sell said land through J. A. Carter, of Altus, which resulted in the execution of a contract to purchase said land by Lannie Hughes and Jack Hughes (father and son), at a price of $14,000, which contract was signed by Mrs. Wheatley and deed of conveyance and deposit of $1,000 were placed in escrow in the Altus National Bank pending the clearing of the title. Such sale was not completed, and after the death of Mrs. Wheatley, escrow papers were withdrawn from the bank, contract of sale and deed destroyed, and the contract terminated.

With respect to negotiations for the sale of said land during the latter part of the year 1945, there is a conflict in the evidence. Such evidence is pertinent to the issue of whether there was a valid delivery of the deed of October 29, 1936. Carter, the real estate agent, testified that in the course of the negotiations for the sale of the land, Wheatley stated that such land was his wife's property, and that he was looking after the sale of the land for her because of her health; that contract of sale and deed were drafted by Mr. Yates, attorney at Altus, and executed by Mrs. Wheatley at a hotel in Altus; that Mrs. Wheatley took no part in the negotiations; that due to an outstanding reservation of an interest in the mineral rights, it was necessary to bring a suit to quiet title before completing the sale, and that such suit was filed by Mr. Yates.

Lannie Hughes testified that he had signed, in Mr. Yates' office, a contract to purchase land for $14,000; that Wheatley said that the land was his wife's property. Jack Hughes testified he and his father undertook to purchase the land in the Fall of 1945; that Wheatley said the land belonged to Mrs. Wheatley, and that she was in ill health and did not feel like walking up the steps to the attorney's office, and that he was transacting business for her.

On the other hand, Wheatley testified that he told Carter and Lannie and Jack Hughes that the land was "our land"; that he told Mr. Yates, the attorney, that he had an unrecorded deed, and that he employed Yates to bring the quiet-title suit. He denied that he told Carter and Lannie and Jack Hughes that the land belonged to his wife, and that he was handling it for her.

Carter also testified that after the death of Mrs. Wheatley he learned that the escrow contract had been withdrawn, and made demands on Wheatley for payment of a commission, and stated that he offered to take the original deed, signed by Mrs. Wheatley, plus a quit-claim deed from Hughes, and complete the escrow contract, and that he first learned of the unrecorded deed to Wheatley when the latter came to Altus regarding settlement of the commission; that Wheatley told him he could have the property if he wanted to take a deed from Wheatley, and pay him in money; that Wheatley also told him that his wife had given him a deed to this land and that he had given her a deed covering certain property belonging to Wheatley, and that such deeds were to be used in case of death.

Lannie Hughes also testified that he had a conversation with Wheatley after the death of Mrs. Wheatley, at the office of Mr. Yates, at which time Wheatley said that his wife had died and that he could not go through with the deal or clear up the title, and that Wheatley said that he had a deed which had been given to him by Mrs. Wheatley and would put it on record, and that Wheatley offered to give Hughes a deed, which he refused to take; that Wheatley said that his wife had given him a deed in case anything should happen. Also, Jack Hughes testified that he was present in Mr. Yates' office when Wheatley told Lannie Hughes that he had a deed given him by Mrs. Wheatley, which was the first time that he had heard of this deed.

Wheatley also testified that in 1936 he deeded a nine-room home in McAlester to Mrs. Wheatley, and in 1936 he acquired a deed from Mrs. Wheatley to the above-described land in Jackson County; that Mrs. Wheatley signed the deed of October 29,

1936, gave it to him, and he put it in the box at the McAlester bank, and that the deed had been in his possession since that time, except when placed of record; also, that he rented the land, collected the rent, and paid the taxes. Dick Warren, witness for plaintiffs, testified that he had been renting the land since 1928, and in that year Wheatley told him Mrs. Wheatley owned the land. After 1936, Wheatley told him that he and Mrs. Wheatley had given each other deeds for their properties; he believed that the language used was that they had "exchanged" deeds. Mr. Yates testified that he had examined the abstract of title and told Wheatley what had to be done; that record title appeared in Mrs. Wheatley's name.

The trial court found that the heirships of Dr. J. W. Echols and Fay Ann Echols, as above set forth, were correct, and that the heirs of Mrs. Wheatley were her surviving husband and her nephews, niece and sister, who are hereinabove named; and also found that on October 29, 1936, Mrs. Wheatley executed a deed to all of the land involved in this action to her husband, the plaintiff Wheatley, but that such deed was not delivered to him during the lifetime of Mrs. Wheatley, and that she died the owner of said land. The court also found that an undivided one-half interest in the mineral rights was reserved by the Echols deed, dated February 5, 1924, and that this interest was conveyed by deed of November 26, 1930 to Dr. J. W. Echols and Mrs. R. D. McAfee, and that Mrs. McAfee and the heirs of Dr. Echols are the owners of said one-half interest in the mineral rights, for the reason that there had not been a sale of the land, as contemplated by the provisions of the deed of February 5, 1924. The trial court rendered judgment quieting title in the plaintiff Little as to an undivided one-fourth interest in the oil and gas lease, and in the plaintiff Wheatley as to an undivided one-fourth interest in the mineral rights and an undivided one-half interest in the surface rights, and quieting title in the defendants as to the remaining interest in the mineral rights and surface rights. ˝Judgment was rendered against the plaintiff Wheatley in

the amount of $1,031.12, representing one-half of the net balance of the rentals in his hands.

▇ In seeking to reverse said judgment, the plaintiffs rely upon four propositions. Proper disposition of this appeal involves consideration of the decisive question whether the judgment of the trial court is clearly against the weight of the evidence. We are committed to the rule that in cases of equitable cognizance such as this, where the evidence is in conflict, the judgment of the trial court is entitled to great respect and will not be set aside unless clearly against the weight of the evidence. O'Neal v. Upton, 202 Okl. 403, 214 P.2d 712; Clements v. Mee, Okl.Sup., 254 P.2d 354.

▇ Plaintiffs, under their First and Second Propositions, contend, in substance, that the evidence sufficiently shows that deed of October 29, 1936 from Mrs. Wheatley to the plaintiff Wheatley was delivered, and that the trial court erred in decreeing that Mrs. Wheatley was at the time of her death the owner of said land (all of surface rights and one-half of mineral rights). Plaintiffs rely upon the following decisions of this Court: Wasson v. Collett, 204 Okl. 360, 230 P.2d 258; McKeever v. Parker, 204 Okl. 1, 226 P.2d 425; Yarbrough v. Bellamy, 197 Okl. 493, 172 P.2d 801; Shintaffer v. Rorem, 167 Okl. 647, 31 P.2d 559; In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933; O'Neal v. Turner, 197 Okl. 527, 172 P.2d 1013. In each of these cases, except the Yarbrough case, the trial court had held that there had been a valid delivery of the deed of conveyance, and on appeal, we affirm the judgment of the trial court as not being against the clear weight of the evidence. In the Yarbrough case the trial court held that the deed had not been delivered and we affirmed such judgment as not against the clear weight of the evidence. The above-cited cases are not decisive of this appeal. In the instant case there appears to be no dispute as to the law of Oklahoma with respect to the requirements in making a valid conveyance of real estate. It is well established that delivery of a deed is an essential requirement to pass title. The dispute arises in

the application of the law to the facts of the instant case.

■■ In the case of Simler v. Simler, 168 Okl. 288, 32 P.2d 876, we held that where there is a dispute as to whether there has been a delivery of a deed of conveyance, the real test is the intention of the grantor, which intention may be manifested by mere acts and words or both combined, and such acts and words and the circumstances relevant thereto are susceptible of parol proof. In the case of O'Neal v. Turner, supra, we held (second subdivision of Syllabus):

"Where there is a dispute as to whether a deed has been delivered so as to vest in the grantee a present title, the question is one of fact to be determined from the facts and circumstances peculiar to each case; and is largely a question of intention on the part of the grantor to be ascertained from the acts and declarations of the grantor preceding, attending, and subsequent to the execution of the instrument."

In the opinion, the court said:

"It is clear that there must be a delivery of a deed in order for it to be effective to vest a present title in the grantee, but it is not clear as to just what acts will constitute a delivery. The question is largely one of intention to be gathered from the facts and circumstances of each case. Johnson v. Craig, 37 Okl. 378, 130 P. 581. * * *"

See also Snodgrass v. Snodgrass, 107 Okl. 140, 231 P. 237, 239, 52 A.L.R. 1213, wherein the court said:

" * * * A deed, to become effective, must be delivered by the grantor during his lifetime, for if same be executed only for delivery after the grantor's death, the same is only a will regardless of its name and is valid only when executed in the form and manner provided by law for the execution of a last will and testament. * * *"

■■ The crucial question in this case is whether or not Mrs. Wheatley delivered the deed to her husband with the present intention to pass title to him. There is no question but that the actual physical delivery of the deed took place. This, standing alone, would give rise to a strong presumption that title passed. Manifestly, if a valid delivery of the deed took place nothing short of a reconveyance by Mr. Wheatley to his wife could revest her with title. Mr. Wheatley would then be the owner of the property and he and his wife could do with it as they pleased. We are not unmindful of numerous cases decided by this court wherein the grantor, after making a valid and effective transfer of title to the grantee, continued to exercise with or without the consent of the grantee various acts of dominion and control over the property which he had conveyed, and wherein it was held that such activities on the part of the grantor did not defeat the title of his grantee. Such activities cannot revest the grantor with title. They may, however, be considered by the court in determining whether or not title did in fact and in law actually pass at the time of the delivery of the deed. We do not regard such decisions as controlling in the instant case or as contrary to the conclusions herein expressed.

■■ It appears from the evidence in the instant case that the attorney, Mr. Yates, was acting for the purchasers in checking the title, and also for Mrs. Wheatley in bringing suit to quiet title. All of the evidence points to the fact that in the Fall of 1945, and during the negotiations for the sale of the land, the record title was in Mrs. Wheatley, and that Yates examined abstract of title and told Wheatley what had to be done. Lannie and Jack Hughes were relying upon Yates to do what was necessary to give them a good title. If Yates had been informed that Wheatley was in fact the owner of the property it seems that the logical and usual thing would have been to immediately have the deed of October 29, 1936 recorded, and proceed with the sale of the property and the suit to quiet title, in the name of Wheatley. This was not done. In January, 1946, quiet-title action was filed in the name of Mrs. Wheatley, alleging ownership of the land. This was done with the knowl-

edge and approval of Wheatley, the evidence being uncontroverted that he handled all negotiations pertaining to the proposed sale of the land to Lannie and Jack Hughes. We cannot agree that the evidence shows an effective delivery of this deed during the lifetime of Mrs. Wheatley. On the contrary, we are convinced that it was the intention of Mr. and Mrs. Wheatley that the deed was not to take effect as a transfer of title, except in the event Mrs. Wheatley should predecease her husband. We are also convinced that such deed was not accepted by Wheatley as an unequivocal transfer of title to him. Under the evidence, the deed was signed and acknowledged by Mrs. Wheatley, and there was a manual delivery of the deed to Wheatley. This was not enough to constitute a valid delivery of the deed since Mrs. Wheatley did not have the present intention to vest title in her husband. We think that the testimony of Carter and Lannie and Jack Hughes, to the effect that Wheatley during the negotiations for sale of the land stated that the same belonged to Mrs. Wheatley and that he was looking after the matter for her by reason of her health, and their further testimony that Wheatley said nothing to them regarding the existence of the unrecorded deed until after Mrs. Wheatley's death, together with the additional undisputed fact that the above-mentioned quiet-title action was filed in January, 1946 in the name of Mrs. Wheatley as plaintiff, clearly establish that the land was the property of Mrs. Wheatley and so regarded by her and Wheatley, and that there had not been a valid and effective delivery of the deed of October 29, 1936, so as to transfer title to Wheatley.

We have also considered the testimony of Carter to the effect that Wheatley told him that Mrs. Wheatley had given him a deed and that he had given her a deed covering certain property belonging to Wheatley and that such deeds were to be used in case of death; also, the testimony of Lannie Hughes to the effect that Wheatley said that his wife had given him a deed in case anything should happen. Such testimony, obviously believed by the trial court, was an admission by Wheatley that his wife did not deliver the deed with present intention to pass title to Wheatley. We can see no advantage that either Wheatley or his wife could hope or expect to gain from merely exchanging deeds covering land and property owned by them unless in furtherance of a plan to avoid administration proceedings by having the deed recorded only in the event of the death of the grantor. Such a transaction is testamentary in character, and, in the instant case, the deed of October 29, 1936 was ineffective as a conveyance, and was also ineffective as a will because it was not executed with the formalities required by law for the execution of a will. The judgment is in accord with the evidence and not clearly against the weight thereof.

■ The third contention made by the plaintiffs is that the trial court erred in excluding certain testimony of Wheatley and Mr. Yates on the grounds that they were not competent witnesses. It appears that Wheatley, after testifying that he had employed Mr. Yates, an attorney, to bring a quiet-title action (the action filed in January, 1946) and had told Yates that he had an unrecorded deed, was asked the further question whether Wheatley advised Yates to bring the suit which he brought. He answered this question in the affirmative, and the court sustained an objection to this question after it had been answered. We think the instructions given by Wheatly to Yates respecting the quiet-title suit are immaterial. The action was brought in Mrs. Wheatley's name, and nothing Wheatley or Yates could say would change the record. Yates, after testifying that he examined the abstract and told Wheatley what had to be done, was questioned as to whether Wheatley told Yates that he had an unrecorded deed. A general objection was made to this question and sustained, and the plaintiffs then made an offer of proof to the effect that if Yates were permitted to testify, he would answer this question in the affirmative, and that the suit was brought in the name of Mrs. Wheatley at the suggestion and direction of Yates, and not at the suggestion of Wheatley. Objection to this offer was sustained. We think that the trial court should have

permitted the witness, Yates, to answer the question whether Wheatley told Yates that Wheatley had an unrecorded deed. As to that part of the offer to the effect that quiet-title suit was brought in the name of Mrs. Wheatley at the direction and suggestion of Yates and not at the suggestion of Wheatley, the objection to the offer was properly sustained. It is immaterial whether the bringing of this suit was at the suggestion of Wheatley or his attorney. Wheatley had previously testified that he had told Yates that he had an unrecorded deed and that he employed Yates to bring the quiet-title suit. We think that even had the testimony of Yates been admitted by the trial court, it would not have changed the result. See Hill v. Hill, 202 Okl. 483, 215 P.2d 553, wherein it was held that this court will not reverse a cause for the erroneous rejection of evidence unless it appears to the court that such rejection has probably resulted in the miscarriage of justice, or that the trial court would have reached a different conclusion if the evidence rejected had been admitted and considered by him. Even though the trial court was in error in its rulings respecting the above-mentioned evidence, same is not reversible error.

Plaintiffs' last contention is that if the deed of October 29, 1936 was delivered, then there was a sale of the land, and the interest in the mineral rights reserved by the Echols deed of February 5, 1924 terminated. In view of our conclusion that the evidence in this case sufficiently shows that there was not a valid delivery of the deed of October 29, 1936, this last contention need not be considered.

Judgment affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, O'NEAL and BLACKBIRD, JJ., concur.

WELCH, DAVISON and WILLIAMS, JJ., dissent.

This court acknowledges the services of attorneys, William H. Martin, R. P. Colley and G. C. Spillers, Jr., who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

WILLIAMS, Justice (dissenting).

I am unable to agree that the judgment of the trial court is in accord with the evidence and not clearly against the weight thereof.

The simplest mode of delivering a deed is by manual transfer of deed by the grantor to the grantee, with the intention of relinquishing all control over the instrument and of passing title to the property. It is clear that if the grantor hands the deed to the grantee personally, without saying or doing anything to qualify the significance of such act, an effective delivery is made. See 16 Am.Jur., Deeds, 122, and cases cited in note 6 thereunder. The evidence in the case at bar reveals, without contradiction, that the deed in question was executed and acknowledged by the grantor and handed to the grantee who took the same and placed it in his personal safety deposit box where it thereafter remained until placed of record by the grantee some years later. What more could the grantor have done to effectively pass the title to the property involved to the grantee? The majority opinion refers to certain evidence with reference to the acts and statements of the grantee, Mr. Wheatley, and apparently relies thereon for its holding that the grantor, Mrs. Wheatley, had no present intention to pass title to the property in question to her husband. As is pointed out in the majority opinion, however, the question involved is the intention of the grantor, that is, *Mrs. Wheatley.*

It seems that the evidence concerning the activities and statements of the grantee, Mr. Wheatley, should not be considered determinative of the intention of the grantor. There appears to be practically no evidence in the record of any acts or statements on the part of the grantor which would negative an intention on her part to pass title to the property in question to her husband.

The case of In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933, 938, appears to be squarely in point with the case at bar. There we said:

"The appellants contend that the fact of delivery is negatived by the fact that Mr. Griffin continued to exercise full control over the lands by renting them for oil and gas and agricultural purposes, collecting the rents, and paying the taxes. These circumstances would be entitled to weight as to the intention of the grantor were it not for the fact that the parties were husband and wife. We think the presumption of delivery was not overcome by this evidence."

In the case at bar, the grantor and grantee of the deed in question were also husband and wife and I am of the opinion that the same rule should apply. Furthermore, in the case at bar, it is not necessary to rely on the presumption of delivery, since the evidence of actual delivery is clear and uncontradicted.

The only possible evidence in this record which might tend to negate the intention of Mrs. Wheatley to transfer the title of the property to her husband is that Mrs. Wheatley verified the petition to quiet title to the property in a suit brought in her name. On this point, however, plaintiff offered testimony of the attorney who prepared and filed the suit, but the trial court sustained an objection to the attorney's testimony, apparently on the theory that it would constitute a privileged communication. In this respect the court was in error. The evidence revealed that the attorney in question had been employed by the plaintiff, Mr. Wheatley, and that Mrs. Wheatley had never conversed with the attorney in any manner. Any privilege attaching to the conversation between Mr. Wheatley and his attorney would, of course, be solely for the benefit of Mr. Wheatley. Here, however, Mr. Wheatley, the plaintiff, was the party offering the testimony and obviously waived any privilege which might have accrued to him as to his conversation with his attorney. Under such circumstances, the rejection of the proffered testimony was error. In this regard the majority opinion agrees that the court was in error, but holds that the error was harmless, because the testimony would not have affected the outcome of the case.

This testimony was material since it directly concerned the only act on the part of the grantor, Mrs. Wheatley, of which there is any evidence in the record, which might tend to negate her intention to pass title to the property in question to her husband. It occurs to me that plaintiff has in effect been denied the right to offer competent evidence on the very point upon which the case has been decided against him.

It should also be kept in mind that the burden of proving that the deed in question was never in fact delivered, rests squarely upon the defendant, who alleges such non-delivery and that such proof must be by clear and convincing evidence. McKeever **v.** Parker, 204 Okl. 1, 226 P.2d 425.

Being of the opinion that the defendants failed to sustain this burden and that the finding of the trial court that the deed in question had never been delivered is clearly against the weight of the evidence and is not supported by the evidence, and that the judgment· of the trial court should be reversed, I therefore respectfully dissent.

I am authorized to state that Mr. Justice DAVISON concurs with the views herein expressed.