**SUTTON et al. v. STATE ex rel. SELBY, Co. Atty.**

No. 10628—Opinion Filed May 2, 1922.

(Syllabus.)

1. **Bail—Forfeiture of Bond — Finality of Order — Collateral Attack — Action on Bond.**

The final order of the trial court, declaring a forfeiture of a bail bond, cannot be collaterally attacked in a subsequent action against the principal and sureties on the bond, except for fraud extrinsic to the matter tried by the court declaring such forfeiture.

2. **Judgment—Vacation for Fraud.**

The frauds for which a court of equity will set aside a judgment or decree between the same parties, rendered by a court of competent jurisdiction, are frauds extrinsic or collateral to the matter tried by the first court, such as where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of compromise or the like, and not fraud which was an issue in the former action.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by the State of Oklahoma, on the relation of Charles Selby, County Attorney of Oklahoma County, against A. L. Sutton and others to recover on forfeited bail bond. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

C. B. Stuart and M. K. Cruce, for plaintiffs in error.

Forrest L. Hughes, Co. Atty., and M. S. Singleton, Asst. Co. Atty., for defendant in error.

NICHOLSON, J. This is an action brought to recover the sum of $500 upon a forfeited appearance bond executed by A. L. Sutton, as principal, and J. Coody Johnson, A. H. Tyson, and T. H. Traylor, as sureties, given to answer a charge in the county court of Oklahoma county.

The petition is in the ordinary form of actions of this character, and no complaint is made of the sufficiency thereof. The amended answer, after admitting the execution of the bond for the appearance of A. L. Sutton at the next term of court, avers that the case of the state of Oklahoma against A. L. Sutton was set for trial on the 7th day of December, 1916; that on said day said A. L. Sutton and his attorney were present in said court ready for trial; that on said day, when the case was called for trial, the same was, on motion of the county attorney, stricken from the docket for that term of court; that Sutton lived at or near Wewoka, and that his attorney resided outside of Oklahoma City; that on the 7th day of December, 1916, the county attorney, Charles Selby, informed said Sutton and his attorney that Sutton was not needed and that said case against him had been or would be dismissed; that the state of Oklahoma, through the county attorney's office, desired to use him later as a witness against some other people and he would be notified in the event they wanted him; that relying upon said statement of the county attorney, and being misled thereby, Sutton and his attorney returned home; that living outside of Oklahoma county, neither Sutton nor his attorney received any notice of the setting of said case for trial on the 26th day of February, 1917, and in fact had been, by the statement and promise of the county attorney, led to the belief that said case had been dismissed, and relying solely upon said statement, they made no effort to inform themselves as to the condition of the docket; that Sutton informed his bondsmen that the case had been or would be dismissed and they relied upon said information, and had no knowledge of the setting of said case on February 26, 1917, and for that reason neither they nor Sutton were present in the county court on that day; that neither Sutton nor his bondsmen had any notice or knowledge of the order forfeiting said bond until this action was filed against them and summons served upon them during the month of October, 1917, and for this reason, not knowing that said bond had been forfeited, they were precluded from making a motion in the county court to set aside such forfeiture until two regular terms of the county court had been convened and adjourned; that said A. L. Sutton had been ready and willing at all times to appear in said court, had been at or near Wewoka at all times, and could have been found at all times; that he was prevented from being at said trial by reason of a mistake and reliance upon the assurance of the county attorney that said case had been or would be dis-

missed, and by reason thereof was prevented by the state of Oklahoma, through its assistant attorney, from being present at said trial, and because thereof the defendants were not liable upon such bond, and the order forfeiting the same should be set aside and held for naught.

To sustain this defense, the defendant A. L. Sutton, who was the defendant in the case in the county court, and the one who gave the bond, testified in substance that he and his attorney, one Wattman, were present in the county court on December 7, 1916, the day the case was first set for trial; that they went to the office of the county attorney and had a conversation with Mr. Selby, the then assistant county attorney, in which Selby said that he was not after Sutton, but was after the agent at Newalla, and if Sutton would tell the truth about it, he would let him go; that Sutton replied that he did not know anything against the agent; that Selby then asked him where certain other parties lived, to which Sutton replied that some of them lived in Pottawatomie county, and Selby then said: "Well, you can go back home and find some of the other boys; I will let you go, and you need not come back any more unless we let you know. If we need you any more we will let you know." He further testified that Selby requested him to obtain statements from other parties who had been obtaining liquor at the express office at Newalla; that he procured these statements and gave them to Wattman to send to Selby; that he told his bondsmen that the case against him had been dismissed, and that he had no notice or knowledge of the setting of said case against him the following February, and did not know his bond had been forfeited until he was served with a summons in the case at bar.

E. W. Wattman testified that he was attorney for Sutton in the case in the county court; that he resided at Wewoka in 1916; that he and Sutton were in court ready for trial on December 7, 1916, when the case was set for trial; that he and Sutton went to the office of the county attorney and had a conversation with Mr. Selby in which Selby said that he had had considerable trouble at Newalla with the agent there ordering whisky and carrying it into the Indian Territory, and he wanted to break up that practice; that Selby stated that he would dismiss the case, but he wanted Sutton and his people to aid him in procuring evidence against the agent, and told Sutton that he wanted him to go

home and get the other Suttons' statement; that Selby stated he wanted to strike the case from the assignment and when Wattman got the affidavits he required he would dismiss the case; that Wattman said to Selby "Why not dismiss it now?" and Selby replied, "Oh, I will not do it now, but you get the affidavits and I will dismiss the case." He further testified that he sent the affidavits as requested. On cross-examination he stated in answer to a question by Mr. Selby: "You said that when these statements came in, you were of the opinion you would dismiss the case."

For the plaintiff, Charles B. Selby testified that he was county attorney, and was assistant county attorney on December 7, 1916; that Sutton and Wattman, his attorney, came to the county attorney's office; that Judge Zwick, the county judge, was not in the office, but Mr. Brents, special agent for the government in liquor cases, was there; that Selby said to the defendant and his attorney that one D. W. Holstein, who had been the railroad agent at Newalla, had been violating the prohibitory laws, in that he had been taking orders for whisky and alcohol, representing certain foreign liquor dealers, and that there were four cases pending against him then; that he wanted to convict Holstein, and that he wanted to know what the facts were: that he had some leaves from the express book showing the receipt of shipments of whisky in the name of various parties, including the defendant Sutton and three or four other Suttons; that he wanted to know the facts and that if Holstein had taken orders from Sutton and his relatives and friends, and had transmitted these orders, he wanted to use Sutton and his relatives as witnesses, and if he did use Sutton, of course, he would not prosecute him. He said to Wattman, "You understand and know the law, that if I do use Sutton and his relatives on these charges against Holstein, that I cannot prosecute them"; that he then said that he needed further evidence of the sale of liquor, and he wanted Sutton to go back and talk to his brothers and other relatives, and if they would support the statement that Holstein had been taking orders for whiskey, if that was a fact, then Selby would use Sutton and his relatives as witnesses against Holstein; that he said he wanted Wattman to go back and have the parties come to his office and make these statements under oath, so that he could rely upon their testimony, and if this was done, that he would use them as witnesses and would not prosecute Sutton. He further

testified that in five or six days he received a little statement to the effect that all the parties who signed the statement had received whisky at Newalla, but that the statement did not contain any of the information he desired, or any information not then in his possession, and that he thought he returned the statement with the notation thereon that it was of no value to him. (Wattman testified that he did not receive this statement.) He further testified that he did not say that Sutton need not return until he notified him.

T. A. Brents, a witness for the plaintiff, testified that he was a special officer in the Indian service, particularly engaged in that branch of the service pertaining to the liquor traffic in the Indian country, and violations of the interstate commerce where Indians were interested; that he was in the office of the county attorney and heard the conversation between Selby, Sutton, and Wattman; that Selby said to Sutton that "Holstein, the agent at Newalla, is the man I want to get, and he should be prosecuted, and I wish you would go back home and get the affidavits of these relatives of yours and mail them in here to this office, and I will see what can be done for you." and Wattman said, "You can do that, can't you, Sutton?" and Sutton replied "yes," and they went out. The docket shows that on December 7, 1916, the case against Sutton was stricken from the assignment on motion of the state.

Section 6110, Rev. Laws 1910, provides for the forfeiture of bail and the procedure whereby and the time within which a forfeiture may be set aside, and this court has repeatedly held that after a court has decreed a forfeiture and the term of that court at which the forfeiture has been taken has expired, the final order of the trial court declaring such forfeiture cannot be collaterally attacked in subsequent proceedings against the sureties on the bond. Ables v. State, 79 Okla. 282, 193 Pac. 969; Andrews v. State ex rel. Saye, 80 Okla. 20, 193 Pac. 873; State v. Hines, 37 Okla. 198, 131 Pac. 688; Hines v. State, 39 Okla. 638, 136 Pac. 592; Edwards v. State, 39 Okla. 605, 136 Pac. 577; State v. Pierce, 65 Okla. 212, 166 Pac. 132; State v. Holt, 42 Okla. 472, 141 Pac. 969.

The plaintiffs in error seek to escape the force of the rule announced and insist that the situation disclosed by the record was such as to bring this case within the class of cases wherein a court of equity is warranted in relieving against a judgment of forfeiture on one of the well-recognized grounds of equity jurisdiction, viz., unavoidable surprise or misfortune superinduced by the acts of the county attorney which, while not intended as a fraud, yet did actually operate as a "legal" fraud upon the principal and his bondsmen, and while counsel do not in any way impugn the personal motives or character of the county attorney, they contend that by his acts he was guilty of actual fraud in a legal sense, even though his motives and intentions were of the best, and predicated their chief defense upon the theory that both Sutton and his sureties were misled by the statements and actions of the county attorney, Mr. Selby, to such an extent that a court of equity would grant them relief against the judgment of forfeiture.

While there is some conflict in the evidence as to what was actually said in the conversation between the county attorney and Sutton and his attorney, yet it appears conclusively that Sutton was present on the 7th day of December, 1916, ready for trial; that the case against him was stricken from the assignment on motion of the state, and Sutton was by the county attorney told to go home and procure certain affidavits and send them to the county attorney; that the county attorney wanted to use Sutton as a witness against Holstein; that Sutton procured affidavits from other parties and that these affidavits were sent to the county attorney, and neither Sutton nor his attorney ever received word from the county attorney that these affidavits were unsatisfactory. No one can read the record in this case and arrive at any other conclusion than that Sutton failed to appear because he understood and believed that the case against him would be dismissed, and it would not be necessary for him to appear further unless notified so to do by the county attorney, and that this understanding and belief was induced by the acts and words of Mr. Selby, the county attorney. So the question for determination is, whether or not the acts of Mr. Selby, while not intended as a fraud, really amounted to such a legal fraud upon Sutton and his bondsmen as will entitle them to relief from the judgment of forfeiture.

A party may by his acts be guilty of actual fraud in a legal sense, while his motives and intentions are the best. Joines v. Combs et al., 38 Okla. 380, 132 Pac. 1155.

By the 5th subdivision of section 903, Rev. Laws 1910, actual fraud is defined as "any other act fitted to deceive." It cannot be doubted that the acts of Mr.

Selby were fitted to deceive Sutton, and, in fact, did deceive him, and because thereof Sutton did not appear at the subsequent term of court, the consequences of such failure being the forfeiture of his bond. We are of the opinion that the facts in this case bring it within the rule announced in the case of United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, where, in discussing the frauds for which a bill in chancery will be sustained to set aside a judgment or decree between the same parties, the court used the following language:

"But there is an admitted exception to this general rule, in cases where, by reason of something done by the successful party to a suit, there was, in fact, no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumed to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. See Wells, Res Adjudicata, sec. 499; Pearce v. Olney, 20 Conn. 544; Wierich v. De Zoya, 7 Ill. (Gilm.) 385; Kent v. Richards, 3 Md. Ch. 392; Smith v. Lowry, 1 Johns. Ch. 320; De Louis v. Meek, 2 Greene (Iowa) 55."

In McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739, this court held that an equitable proceeding to set aside a judgment for fraud practiced by the successful party will lie where such fraud is extrinsic to the issues in the proceeding attacked. Under the authority of these cases, a suit in equity to set aside a judgment of forfeiture might have been maintained, and by the provisions of section 4745, Rev. Laws 1910, the defendant is permitted to set forth in his answer as many grounds of defense as he may have, whether they be such as have heretofore been denominated legal or equitable, or both. Therefore, the defense of fraud extrinsic if the issues tried in the former proceeding was a proper defense.

The county attorney is the legal representative of the state and bears the same relation to a cause being prosecuted by him as that borne by counsel for private litigants, and if by his acts the defendant

and his counsel are deceived to the extent that they are led to believe it will not be necessary to appear further in the case, and, relying on the acts and words of the county attorney, they do not appear, the parties are in the same situation as private litigants, and the rule that "where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of compromise," and the like, applies and the judgment of forfeiture will be set aside. As touching upon the question involved, see the following: Tanquary v. People (Colo.) 139 Pac. 1118; People v. Hammond, 7 N. Y. Supp. 219; Southard v. People (Colo.) 195 Pac. 102; Husbands v. Commonwealth (Ky.) 136 S. W. 632; State v. Cooper (Minn.) 180 N. W. 99.

We conclude that, under the facts disclosed, the state in equity was estopped from insisting upon a forfeiture of the bond or from taking judgment thereon, and that the trial court erred in not so holding.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

HARRISON, C. J., and PITCHFORD, JOHNSON, and McNEILL, JJ., concur.