## FOURTH NATIONAL BANK OF TULSA v. MEMORIAL PARK.

No. 26676.    Sept. 14, 1937.

Rehearing Denied Jan, 25, 1938.

Allen, Underwood & Canterbury and Paul Pinson, for plaintiff in error.

A. F. Moss and H. R. Young, for defendant in error.

BAYLESS, V. C. J. At the date this action was commenced in the court below, the Fourth National Bank of Tulsa, defendant to the action, held a certain instrument of writing which had theretofore been recorded in the office of the county clerk of Tulsa county. Said instrument was entitled, "Deed to Lot in Memorial Park," and on its face purported to be a deed to said bank by "Memorial Park, a Trust Estate," for real estate therein described as "lots 1 to 120 incl., in section 16, of Memorial Park, a subdivision for cemetery purposes." Said instrument appeared as having been executed under date of July 23, 1932, and the execution thereof appeared as being by "Memorial Park, a Trust Estate, by C. W. Beck, its President." It contained the following recitals:

"Know All Men By These Presents: That Memorial Park, a Trust Estate, created by virtue of the laws of the state of Oklahoma, under a declaration of trust filed for record in the office of the county clerk of Tulsa county, Oklahoma, in Book 648 at page 186, and amendments to said declaration of trust filed for record in the office of said county clerk in Book 660 at page 166 and Book 991 at page 321, respectively, hereinafter referred to as grantor, in consideration of the sum of one dollar and other valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell and convey unto the Fourth National Bank of Tulsa hereinafter referred to as grantee, lots 1 to 120, incl., in section 16, of Memorial Park, a subdivision for cemetery purposes. * * *"

At the time the aforementioned instrument was executed, C. W. Beck was one of the three trustees who, under the declaration of trust and amendments thereto mentioned in said instrument, had charge of and was managing the property and affairs of the trust estate, Memorial Park. Said instrument was introduced in evidence at the trial in the court below, and has been copied into the case-made brought up in this appeal, and likewise the declaration of trust and amendments thereto, to which said instrument refers.

In the petition which the plaintiff in the action filed in the court below, it is alleged: That plaintiff is the legal owner of the fee-simple title and in actual and peaceable possession of lots 1 to 120, inclusive, in section 16 of Memorial Park, a cemetery, situated in Tulsa county; that the defendant, Fourth National Bank of Tulsa, holds a pretended deed covering said lots purported to have been executed by C. W. Beck, as president of Memorial Park, a trust estate, which deed is of record in the office of the county clerk of Tulsa county; that said deed is void and of no effect for the reason that the same was executed and delivered without any consideration paid therefor on the part of the defendant, and for the further reason that the maker of the deed was without authority to execute the same; that said deed is void for the reason that it was delivered unto the defendant as additional collateral on a certain loan held by said defendant in the amount of $15,000, known as the Brown-Williams Brothers-Holleman-Beck loan, which loan constituted no obligation on the part of plaintiff, and there was no obligation of plaintiff to collateralize said loan, and there was no authority on the part of C. W. Beck, then president of Memorial Park, a trust estate, to utilize the assets of said trust estate to collateralize a personal obligation to said Fourth National Bank of Tulsa.

In answer to said petition, after alleging that it denied "each and every material allegation in said petition contained not herein specifically admitted," said defendant pleaded, as an affirmative defense, that it held a deed covering the real estate described in said petition, executed by Memorial Park, a trust estate, acting by and through its president and secretary, and that said deed "is a valid and binding obligation"; that C. W. Beck was indebted to defendant at the time of the execution of said deed, and that he and the other makers of the note evidencing said indebtedness were being "pressed" by defendant to pay their said indebtedness; and "that as a consideration for the extension of said indebtedness, Memorial Park, a trust estate, acting by and through its president and general manager, C. W. Beck, offered to collateralize and secure said indebtedness by the execution of the deed hereinabove referred to and induced this defendant to further extend credit to the said C. W. Beck and his associates by executing and delivering said deed." And that, "by reason of such facts, said officers, directors and trustees of Memorial Park, a trust estate, being fully advised of the facts surrounding the execution of said deed, and acquiescing therein, the said plaintiff is estopped to deny that the deed was executed without any consideration to it or

executed by the president and secretary of Memorial Park without any authority."

For further affirmative defense, it was alleged in said answer:

"That the stockholders or shareholders in said Memorial Park at the time of the execution of said deed consisted primarily of C. W. Beck and his wife, Mrs. C. W. Beck, and W. E. Brown and his wife, Mrs. W. E. Brown; that the said W. E. Brown was one of the makers of the note evidencing the loan made by this defendant to Beck and his associates, * * * and that C. W. Beck was one of the makers of said note; that all of said stockholders were cognizant of said loan and that all of said stockholders acquiesced and concurred in the arrangement whereby Memorial Park executed the deed to this defendant as hereinabove stated, and that all of said stockholders and shareholders of Memorial Park, a trust estate, are thereby estopped to assert that the deed is void for want of consideration and for want of authority in the officers to execute the same."

Further affirmative defense pleaded in said answer was:

"That plaintiff has been guilty of laches and has waived any right to assert that said deed is void or voidable, in that it has permitted the defendant to sustain a position of prejudice, relying upon the validity and regularity of said transactions surrounding the execution of said deed in extending further credit on the Brown-Beck note indebtedness and in not enforcing payment of same when same became due, and that this defendant is advised and believes that it is necessary, in order to collect said note, that it retain and hold the real estate described in plaintiff's petition as collateral security for the payment of said loan."

For reply to defendant's answer, plaintiff filed a general denial.

After trial had before the court, and at which the only evidence introduced was that on the part of the plaintiff, the defendant offering none, but demurring to the plaintiff's proof, the court, without making special findings of fact and conclusions of law (none being requested), found the issues to be in favor of the plaintiff and against the defendant, and the deed held by the defendant to be "void and of no force and effect." And it was ordered, adjudged, and decreed by the court that said deed "is void and of no force and effect and is hereby canceled, set aside, and held for naught, and the same hereby is removed as a cloud upon title of the plaintiff, Memorial Park, in and to the premises" therein described. Judgment also was rendered that the defendant be perpetually barred and enjoined from setting up and asserting any claim, right, title, or interest in or to said premises by virtue of said deed hostile or adverse to the title or possession of the plaintiff.

It was established by the evidence introduced at the trial in the court below that the Fourth National Bank of Tulsa held a promissory note in the amount of $25,000, payable to its order, and signed by C. W. Beck, W. E. Brown, Wilbur Holleman, and two other individuals referred to in the evidence as "the two Williams brothers"; that said note was signed and delivered to said bank at some time prior to July 23, 1932, and that on that date $15,000 of the original amount was unpaid; that at the time the bank took said note it also took collateral security therefor which was put up by the persons signing the note, which security the bank was holding at the time of the trial; that said note was not the indebtedness of the plaintiff herein; that the bank agreed to grant an extension of time for payment of the note, provided it was furnished collateral security additional to that which it already held, and that Beck, by way of furnishing such additional collateral security, on or about July 23, 1932, tendered said bank the instrument of writing herein aforementioned; that the bank accepted said instrument and on December 30, 1932, caused same to be filed and made a matter of record in the office of the county clerk of Tulsa county; that at the time said instrument was delivered to the bank there was also delivered to it a letter from C. W. Beck, which letter was of the same date as the instrument. Said letter was addressed to the bank, and stated:

"In accordance with our agreement of yesterday you will find enclosed deed to lots 1 to 120, inclusive, in section 16 of Memorial Park. It is the writer's understanding that this deed is given as additional collateral on the loan now in your bank in the sum of $15,000, known as the Brown - Williams Brothers - Holleman - Beck loan. When this note has been paid, the title to the within lots is to be returned to Memorial Park."

While the parties to this action have in their pleadings referred to the instrument of writing held by the defendant as being a "deed," yet the facts alleged in said defendant's answer relative to the circumstances under which, and the purpose for which, said instrument was given and accepted, and likewise the evidence presented at the trial, tend to establish the character and effect of said instrument as being that of a mortgage, rather than a

deed. It is said by this court in the case of Haynes v. Gaines, 76 Okla. 268, 185 P. 74, that:

"Whether a transaction evidenced by an absolute conveyance will be held to be a sale or only a mortgage must be determined by a consideration of the peculiar circumstances of each case. The form of the conveyance is not conclusive. The intention of the parties is the only true and infallible test; this intention to be gathered from the circumstances attending the transaction and the conduct of the parties, as well as from the face of the written contract."

And, to the same effect, is the earlier case of Weisenham v. Hocker, 7 Okla. 250, 54 P. 464, and the later case of State ex rel. Shull, etc., v. Moore, 167 Okla. 28, 27 P. (2d) 1048. Hence, when it is conclusively established, as in this case, that the instrument in question was intended to be a mortgage, it should be treated as such. O. S. 1931, sec. 9674; Kinney v. Heatherington, 38 Okla. 74, 131 P. 1078; Williams v. Purcell, 45 Okla. 489, 145 P. 1151. And, said instrument amounting only to a mortgage, it follows, therefore, that same did not operate to transfer to the defendant herein any interest, estate, or title to the real estate described therein. Pierce v. Ducket, 157 Okla. 21, 10 P. (2d) 697.

It is clear from the facts alleged in the defendant's answer, and from the evidence in the case, that C. W. Beck, in executing and delivering the aforementioned instrument of writing to the defendant, created a situation which in effect amounted to a mortgage being given on trust property with a view to furnishing additional security for the personal indebtedness of a trustee. In 65 C. J. 789, sec. 660, it is said that "it is well settled that a trustee has no authority to pledge or mortgage the trust property to secure his own personal indebtedness." And in Shaw v. Spencer, 100 Mass. 382, it is said that:

"Where one known to be a trustee is found pledging that which is known to be trust property, to secure a debt due from a firm of which he is a member, the act is one prima facie unauthorized and unlawful, and it is the duty of him who takes such security to ascertain whether the trustee has a right to give it. The appropriation of corporate stock held in trust, as collateral security for the trustee's own debt, or a debt which he owes jointly with others, is a transaction so far beyond the ordinary scope of a trustee's authority and out of the common course of business, as to be in itself a suspicious circumstance, imposing upon the creditor the duty of inquiry."

No contention appears to be made or set up by way of defense to the action that C. W. Beck had right or authority of any nature whatever to hypothecate the real estate described in the aforementioned instrument of writing as security for his personal indebtedness. It appears that the defendant, rather than pleading that Beck had some right or authority to so act in the premises, sets up in its answer, as its first line of defense, that the "officers, directors, and trustees of Memorial Park, a trust estate," and all of the "shareholders of Memorial Park, a trust estate," being fully advised of the facts surrounding the execution of said instrument, "acquiesced and concurred" in the transaction. And that, therefore, said officers, directors, trustees, and stockholders are thereby estopped to assert that said instrument is void for want of consideration and for want of authority in the officers to execute same. And while the defendant has so pleaded, yet our examination of the record before us fails to disclose that there was any proof made at the trial in the court below going to establish, either expressly or by inference, that the officers, directors, trustees, and shareholders aforementioned, aside from Beck, had any knowledge whatever that said instrument was being executed and delivered to the defendant for the purpose of constituting security for Beck's personal indebtedness to said defendant. In short, the defense of acquiescence and concurrence, thus asserted by said defendant, failed for want of proof in that respect.

As its second line defense, the defendant pleaded in its answer that the "plaintiff has been guilty of laches and has waived any right to assert" that the aforementioned instrument of writing is void or voidable "in that it has not timely asserted said claims and in that it has permitted this defendant to sustain a position of prejudice, relying upon the validity and regularity of said transactions surrounding the execution of said instrument of writing in extending further credit on the Brown-Beck note indebtedness and in not enforcing payment when same became due."

The record before us discloses that the instrument of writing aforementioned was executed and delivered to the defendant on or about July 23, 1932; that same was filed for record in the office of the county clerk of Tulsa county on December 23, 1932; and that this action was commenced in

578

the court below on May 10, 1933. Hence, it appears that there was no long delay on the part of the plaintiff in instituting the action. The general rule applicable in this jurisdiction is that the question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. American First National Bank v. Peterson, 169 Okla. 588, 38 P. (2d) 957; Higgins v. Classen, 176 Okla. 233, 55 P. (2d) 101. If delay of the plaintiff in bringing the action has worked to the disadvantage of the defendant in this case, the record fails to so disclose it. It is in evidence that at the time the bank made the $25,000 loan to Beck and his associates, it took collateral security therefor, which security it held at the time the aforementioned instrument of writing was delivered to it by Beck; and that at the time of the trial in the court below (April 2, 1935), the amount of the aforementioned loan had been reduced to $13,250. There was no evidence tending to establish that the makers of the note evidencing the indebtedness had become insolvent or that the security held by the bank, aside from the instrument of writing, was insufficient to afford satisfaction in full of the note indebtedness. Clearly, there was a failure of the proof to establish the allegations of the defendant's latter line of defense.

The judgment of the trial court is affirmed.

OSBORN, C. J., and RILEY, WELCH, CORN, and DAVISON, JJ., concur. PHELPS, J., concurs in the conclusion. HURST, J., disqualified. GIBSON, J., not participating.