BYRD v. MARLIN.

No. 34536.   June 16, 1953.

*258 P. 2d 649.*

Malcolm E. Rosser, Muskogee, and Malcolm E. Rosser, Jr., Duncan, for plaintiff in error.

White & Parris, Eufaula, for defendant in error.

WILLIAMS, J.   Parties are referred to herein as in the trial court.

On January 6, 1933, Yahdeka Byrd, plaintiff herein, executed a deed of

trust in which he named B. A. Marlin, defendant herein, as trustee of the "Yahdeka Byrd Trust". Marlin was given the general powers of a trustee with respect to all of Byrd's property; the trust was to expire five years from the date of execution of the deed of trust. Sometime thereafter, and while the trust relationship existed, Byrd made an outright conveyance to Marlin of certain lands involved in this action.

On January 26, 1934, Byrd signed a release of all claims of any kind against Marlin. On March 14, 1934, Byrd was declared incompetent in county court proceedings. A guardian was appointed for him and said guardian brought suit (number 7087 in district court) against Marlin for a settlement and accounting and an order setting aside the deed of trust. On February 25, 1935, a stipulation was entered into between Marlin and the guardian which set out the terms upon which the suit brought by the guardian should be settled. The stipulation was approved by the county judge, and on the same day (Feb. 25, 1935), a judgment was entered in the district court suit according to the terms of the stipulation.

On January 6, 1941, Byrd was restored to competency.

On March 18, 1941, Byrd filed his petition in the case at bar, in which Marlin is defendant. The petition alleged fraud in the procurement of the judgment in cause number 7087, and asked that said judgment be set aside; it also asked that the deeds executed by Byrd to Marlin while they occupied the position of trustee and cestui que trust, be set aside, and for other relief.

Marlin's answer was a general denial and a plea that all of the issues set out in the petition had previously been litigated in cause number 7087.

For reasons which do not appear in the record before us, trial was not had until November 7, 1949. Before the presentation of any evidence, defendant, Marlin, renewed his plea of res judicata, which was overruled; plaintiff then presented his evidence, at the conclusion of which the defendant again pleaded res judicata, and demurred on the grounds that the evidence did not show a cause of action as to him. The demurrer was sustained. The formal order sustaining the demurrer indicates that it was sustained because of the insufficiency of evidence; however, the language used by the trial court, as shown in the case-made, indicates that it was sustained on the grounds that all issues had previously been litigated. The questions for our determination, then, are whether the evidence of plaintiff was sufficient to show a cause of action against the defendant, and whether the plea of res judicata was a valid defense.

The elements essential to the invoking of the *doctrine of estoppel by former recovery, or res judicata*, are listed as follows in 50 C.J.S. Judgments, section 598: identity in the thing sued for, identity in the cause of action, identity of persons or parties to the action, and identity of quality in the persons for or against whom the claim is made. These same essentials are listed in Re Widener's Estate, 112 Okla. 54, 240 P. 608.

With regard to the plea of res judicata, it is self-evident that all of the issues of the instant case could not have been litigated in cause number 7087, for the reason that one of the issues in the case at bar is whether or not there was fraud or collusion in the procurement of the very judgment entered in cause number 7087, and whether it therefore should be set aside. Fraud extrinsic of the issue tried in the former proceedings is a proper defense. See Sutton v. State, etc., 86 Okla. 120 at page 123, 206 P. 818. In Griffin v. Galbraith, 114 Okla. 208, 247 P. 339, a judgment decreeing partition against minor heirs rendered in a prior case was attacked by cross-petition in a later suit to quiet title brought by grantees of partition sale purchaser for the reason, among others, that attorneys appointed to represent certain minors

as guardians ad litem had made no attempt to represent them properly, but had compromised their claims. Therein the court said:

"The action of the attorneys in this cause as disclosed by the record in attempting to compromise said suit was a fraud upon said minors and of no binding force or effect.

"The fact that the interest of the minors was not properly protected by this guardian ad litem, or next friend, is patent, and the court, in permitting a judgment to be entered against these minors, violated likewise its duty to see that the guardian ad litem, or next friend, properly represents the interest of his ward.

"We, therefore, conclude that the second action is not a bar to any of the parties, and the authorities herein cited are sufficient basis for the statement that minors are not bound by a judgment when their cause is not properly presented for consideration and the court does not protect them."

We hasten to say that no charge is leveled at either the judges or attorneys involved in the case at bar, but believe the purported judgment rendered in the former case involved here would be no more binding upon the plaintiff here, an incompetent at that time, than was the former judgment in the case referred to binding upon the minors involved there.

In fact, the following sections of Title 12, O.S. 1951:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made:

"* * *

"Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order." (Section 1031, subdivision 4.)

"Proceedings to vacate or modify a judgment or order, for the causes mentioned in subdivisions four, five and seven, of Section 5267 (1031) must be commenced within two years after the judgment was rendered or order made, unless the party entitled thereto be an infant, or a person of unsound mind and then within two years after removal of such disability. * * * A void judgment may be vacated at any time, on motion of a party, or any person affected thereby." (section 1038.)

leave no room for doubt in the instant case if the filing of a separate suit to vacate or cancel the judgment is a proper method of attack.

It is to be noted that the Griffin case was before this court on its merits, while the appeal in the case at bar is from an order sustaining a demurrer to the evidence. It is elementary that a party appealing from an order sustaining a demurrer to the evidence is in a more favorable position in this court, with regard to the sufficiency of the evidence, than one appealing from a judgment against him upon the merits of his cause. See the quoted syllabus of the court from Adams v. Stanolind Oil & Gas Co. below.

We hold that the issue which is the crux of plaintiff's cause of action—whether there was extrinsic fraud in the procurement of the judgment in cause number 7087—has never been litigated before, and the defense of res judicata is therefore not valid. (It may well be that plaintiff, upon retrial of the case, will desire to amend his petition to allege extrinsic fraud to conform to the proof.)

In the case of Lewis v. Couch, 194 Okla. 632, 154 P. 2d 51, this court said:

"A petition to vacate a judgment for fraud practiced by the successful party in obtaining the judgment is authorized by 12 O.S. 1941 §1031, subd. 4, and is in the nature of an independent action."

This court, in Brown v. Trent, 36 Okla. 239, 128 P. 895, said:

"Where a petition, in a suit to quiet title to certain land, alleges that an order of court directing a guardian to sell land was procured by fraud, and prays to have the order of sale and subsequent orders approving the sale can-

celed, the suit is a 'direct attack' on the orders and not a 'collateral attack'."

"The fraud which will justify the cancellation, in an equitable suit, of a judgment or order of a probate court, must be extraneous to the issues, and such as prevented the complaining party from having a fair hearing."

In the body of the opinion, the court said, at page 247, of the Oklahoma Reports:

"The jurisdiction of a court, in a suit to quiet title, to cancel a judgment obtained by fraud, has been exercised in numerous cases." (Citing 12 cases.)

In the case of McIntosh v. Holtgrave, 79 Okla. 63, at page 66, 191 P. 739, the court classified the methods of attack upon such judgments and quoted from Brown v. Trent, supra, as follows:

" 'But an attack upon a judgment for fraud in its procurement is a direct attack, over which courts of equity take jurisdiction, and no well considered case can be found in which such jurisdiction is denied.' "

In the McIntosh case the court further said:

"A domestic judgment may be attacked in three ways:

" * * *

"(c) By an equitable proceeding to set aside said judgment for fraud practiced by the successful party, said fraud inducing or entering into such order or judgment, where such fraud is extrinsic to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud."

The latter statement in McIntosh v. Holtgrave, supra, was quoted and followed in Cone v. Harris, 104 Okla. 114, 230 P. 721. Therein the court said, quoting 15 R.C.L. 760:

" 'Fraud is the arch enemy of equity, and a court of equity will relieve against a judgment obtained by imposition or fraud. *** It matters little as to the mode or manner in which fraud is effected. A court looks to the effect, and asks if the result is a consequence of the fraud. For any description of mala fides practiced in obtaining a judgment equity will grant relief. If by fraud and misconduct one has gained an unfair advantage in proceedings at law, whereby the court has been made an instrument of injustice, equity will interfere to prevent him from reaping the benefit of the advantage thus unfairly gained."

and quoting 23 Cyc. 1025:

" 'Fraud practiced in the very matter of obtaining the judgment is regarded as perpetrated upon the court, as well as upon the injured party, and will warrant a court of equity in enjoining the judgment.' "

and quoting Pomeroy's Equitable Remedies, vol. 2, §§648, 650, and 651:

" 'Where fraud relates to the conduct of the suit, as where it prevents a party from asserting his rights, there is no fair adversary proceedings, and equity will interfere. The courts commonly speak of the former class as intrinsic and of the latter as extrinsic fraud, etc. Thus, it is generally said that it is extrinsic fraud, mistake, and the like which are grounds for relief.'

" 'Relief is very freely granted where a judgment is taken in violation of a stipulation or agreement as to the conduct of the suit. It is apparent that there is no fraud in the technical sense; such conduct does not fall within the definition of 'actual' fraud—misrepresentation of existing facts. There is merely a breach of a contract; but the effects of such a breach are so manifestly against conscience that the courts will relieve, and base their jurisdiction on the ground of fraud.*** The unconscionable conduct may assume many forms.' "

See, also, Dennis, etc., v. Kelley, 81 Okla. 155 at page 158, 197 P. 442; Elrod v. Adair, 54 Okla. 207, 153 P. 660; and Pevehouse v. Adams, 52 Okla. 495, 153 P. 65.

In Sutton v. State, etc., supra, this court said, quoting United States v. Throckmorton, 98 U.S. 61, 25 L. Ed. 93:

" 'But there is an admitted exception to this general rule, in cases where, by reason of something done by the successful party to a suit, there was,

in fact, no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of plaintiff; or where an attorney fraudulently or without authority assumed to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing.' "

There was evidence in the case at bar that about one week before the execution of the stipulation which was the basis of the judgment entered in cause number 7087, defendant Marlin met plaintiff Byrd and offered to give him "all of the land back and the money back" in order to settle the lawsuit; that the money amounted to about $12,000 or $15,000; that news of this offer was transmitted immediately to Byrd's guardian; that the guardian refused the offer, but said he would settle for $25,000 and title to the property; that on the day of the trial in district court, Byrd started into town to the courthouse to attend the hearing, but Marlin met him three miles out of town and told him "not to be here, it was already settled"; that he later learned that the guardian had signed the stipulation which became the basis of the judgment in district court. Under the terms of the judgment, Marlin got one-half of Byrd's interest in about 160 acres in section 4; all of Byrd's interest in about 80 acres in section 1; all of Byrd's interest in about 200 acres in section 30; all of Byrd's interest in three city lots in Eufaula; and one-half of Byrd's interest in his deceased wife's estate. Parts of this land were described in the deed of trust, and other parts were

described in an outright conveyance from Byrd to Marlin made while the trust relationship existed. See 65 C.J. Trusts, section 522, which reads in part as follows:

"While contracts and dealings between the trustee and the cestui que trust are not absolutely prohibited, generally a trustee cannot take beneficially from the cestui que trust. Equity looks on transactions between a trustee and the cestui que trust with suspicion, and will subject them to the severest scrutiny, *and will permit them to stand only when the trustee affirmatively shows that the agreement was entirely fair and advantageous to the beneficiary* and that there was no fraud, concealment, undue influence, or unconscientious advantage. Contracts between a trustee and the cestui que trust may be set aside on slight grounds, *and the burden of proof is on the trustee* to show that he acted in good faith, that all was fair, open, and voluntary, and that the contract was well understood; * * *" (Emphasis supplied.)

See, also, Kernel v. Murrell, 122 Okla. 22, 250 P. 420, wherein this court said at page 23 of Okla. Reports:

"* * * The law looks with suspicion upon transactions between trustees and beneficiaries, and, when the cestui que trust sells trust property to the trustee, the burden is placed upon the grantee or trustee to whom such transfer is made to show that the grantor or cestui que trust was in possession of full information and acted upon her own volition or independent advice, and free from all influence of the grantee or trustee to whom such transfer is made."

On the question of sufficiency of the evidence, the following is the settled law of this state with regard to demurrers to the evidence:

"A demurrer to the evidence admits all the facts which the evidence reasonably tends to prove, and all the inferences and conclusions which may reasonably and logically be drawn from the evidence, and, upon demurrer to the evidence, the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove." Adams

v. Stanolind Oil & Gas Co. et al., 187 Okla. 478, 103 P. 2d 526.

We hold that the above testimony, together with documentary evidence introduced as exhibits in this case, was sufficient to withstand a demurrer.

The judgment is reversed and this cause is remanded, with directions to grant plaintiff a new trial.

JOHNSON, V.C.J., and CORN, ARNOLD, and O'NEAL, JJ., concur. BLACKBIRD, J., dissents.