BILLINGSLEA

v.

BOOKER et al.

No. 35698.

Supreme Court of Oklahoma.

Oct. 6, 1953.

Rehearing Denied Nov. 17, 1953.

A. E. Pearson, Milton R. Moon, Oklahoma City, for plaintiffs in error.

Suits & Weiss, Oklahoma City, for defendants in error.

CORN, Justice.

This action was brought by Willie Booker and O. E. Miller against Mary A. Billingslea, individually and as executrix of the estate of Ida J. Williams, deceased, to quiet title to west half of lots 17 and 18 in block 32, Park Place Addition to Oklahoma City, Oklahoma.

The facts are Ida J. Williams was formerly the wife of Sam Billingslea and there were born to them several children. Their daughter, Willie, married Frank Graham and acquired this property from him. Sam Billingslea disappeared in 1928 and was gone and not heard from for more than seven years.

Willie Graham died in 1946 and her estate was administered upon by Ida J. Williams, her mother. The final decree of the probate court, entered November 15, 1946, found that Sam Billingslea, intestate's father, had voluntarily left his home and had remained unheard of and with his absence unexplained for more than 7 years (since 1928), and therefore was to be presumed dead; that Ida J. Williams, her mother, was intestate's sole heir and entitled to distribution of the entire estate.

Ida J. Williams died January 29, 1949, while a resident of Oklahoma county. By her will she devised all her property to her daughter, Mary A. Billingslea, the defendant herein. In December 1949, defendant recorded a quitclaim deed from Sam Billingslea and Nannie Billingslea, his wife, purporting to convey all their rights, title and interest in said lots to this defendant.

In March, 1950, plaintiffs brought suit against defendant, individually and as executrix of Ida J. Williams, asking to be declared owner of this property in fee simple and to have their title quieted. The amended petition declared upon three causes of action, the first of which alleged plaintiffs' ownership and right of possession by virtue of a warranty deed executed by grantor December 24, 1946, delivered and recorded in April 1947; that defendant was wrongfully in possession and claiming ownership of the property, and sought to have defendant enjoined from asserting any interest and to have their title quieted. The second cause of action asked to be decreed the right of immediate possession, while the third asserted a claim for damages for defendant's wrongful withholding of possession and for rents and profits collected therefrom during defendant's possession and occupancy.

Defendant filed answer individually and as executrix of the estate, denying plaintiffs' title and alleging their deed to be a forgery, but if actually signed by Ida J. Williams same was without consideration and the result of undue influence; that the probate court's decree that Ida J. Williams was the sole heir of Willie Graham was procured by fraud practiced upon the court, instigated by plaintiffs' influence over her; that defendant claimed one half interest under the will then being probated; and one half interest by virtue of the quitclaim deed from her father and his wife. Defendant denied generally plaintiffs' second cause of action. As to the third cause of action she admitted her possession but alleged same was legal under the will and therefore she was entitled to the income from the premises. By cross-petition defendant re-alleged the matters concerning the deed and that same was void, and asked that the deed be cancelled and that her own title be quieted.

Plaintiffs replied by general denial of the answer and allegations of the cross-petition, and under the issues so presented the case was tried to the court.

At the trial plaintiffs introduced in evidence the probate court's final decree in the estate of Willie Graham wherein, under the findings heretofore mentioned, Ida J. Williams was decreed to be the sole heir of the deceased daughter. Plaintiffs also introduced in evidence the warranty deed dated December 10, 1946, executed and acknowledged by the grantor December 24th and recorded April 28, 1947. Defendants objected to introduction of the final decree on the ground same had been procured by fraud upon the court. They further objected to the introduction in evidence of the warranty deed on the ground same was not a deed and, not being a deed, it would be testamentary in nature and that it had not been admitted to probate. Both objections were overruled and the instruments having been admitted in evidence, plaintiffs rested. Defendants' demurrer to plaintiffs' evidence was overruled.

The deed executed by Ida J. Williams (who will hereafter be referred to as grantor) was in the usual form, but contained the following provision:

"Except a certain Mortgage, that is now of record, and that the party Reserve unto herself Ida J. Williams a life Estate and that the Title do not pass unto the second Party until after my demise."

Concerning execution of the deed plaintiffs introduced the evidence of a minister and notary public who drew the instrument and took grantor's acknowledgement.

Defendants introduced evidence showing the mortgage on this property had never been delinquent while Willie Graham owned the property, other than a small amount of taxes ($21.33); the mortgage account was carried in Willie Graham's name, and did not show whether plaintiff (Willie Booker) had made the mortgage payments, although the mortgage was paid off and released of record in January, 1950.

Plaintiff, Booker, was called as a witness by defendants. She testified that she advanced the grantor sums of money, all or part of which was used to pay taxes, and produced receipts signed by the grantor; plaintiff was not buying the property, but advanced the money out of friendship; she was in Oklahoma City when grantor signed the deed, but went to California thereafter; in 1947 she loaned grantor

$300 and also helped grantor in other ways and gave her meals, because she was alone and her children did not come to assist her. Plaintiff further testified to the circumstances surrounding execution of the deed, and that she and grantor went together when it was placed of record. The $300 loan was to enable grantor to pay up taxes and repair her house in Boley, Oklahoma, so it could be rented. After grantor's death plaintiff finished paying off the mortgage on the property involved, which amounted to $858 and she also paid the 1949 and 1950 taxes, in addition to having expended money for an abstract, insurance premiums, medicine and some incidental expenses. Defendants' counsel cross-examined plaintiff at length in an effort to show that grantor executed the deed to protect plaintiff for the money which she had advanced as loans; also in an effort to discredit plaintiff regarding her testimony that she was present when grantor executed the deed.

Defendant introduced the testimony of Frank Graham, the former husband of Willie Graham, who testified he had given this property to Willie in a divorce settlement; that following Willie's death the grantor had moved into the property and he had lived with her for several months, paying rent and also paying the grocery bill, and during this time grantor received a pension and also some income from the property. Defendants also offered to prove by the witness the fact that grantor's ex-husband actually was living at the time Willie. Graham's estate was probated and this was known to grantor, but he was not notified of his daughter's death. Such evidence was offered for the purpose of attempting to show the grantor had perpetrated a fraud upon the probate court in settling Willie Graham's estate. Objections were sustained to such testimony and defendants' offer of proof was refused.

The defendant testified that when her mother became seriously ill in 1947 defendant returned to Oklahoma City to live with and look after her; the last 25 days of grantor's life were spent in an institution. Defendant introduced the quitclaim deed from her father and step-mother convey-ing his inheritable interest to defendant, and also introduced the grantor's will, which had been offered for probate. During the time defendant stayed with and cared for her mother (July–January) plaintiff never visited the grantor. Defendant identified exhibits in her mother's handwriting in an effort to show grantor had made written statements denying any conveyance to plaintiff. Following grantor's death defendant occupied this property and made the monthly mortgage payments.

The trial court took the case under advisement and in March 1952, entered judgment finding the issues for plaintiffs, quieting plaintiffs' title and decreeing them to have the right of possession; denied plaintiffs relief on their third cause of action and further denied defendants relief upon cross-petition. In rendering for plaintiffs the trial court found specifically that the grantor had conveyed to plaintiffs by warranty deed, under terms of which she had reserved a life estate.

Defendants present the assignment of error relied upon for reversal of this judgment under six propositions. In our opinion only the following matters necessarily must be considered in arriving at a correct decision so we shall not deal specifically with each separate contention. The principal questions involve construction of the instrument executed by the grantor, and whether such instrument was a deed or intended by the parties to operate only as a mortgage. It must be admitted that the instrument was inoperative as a will because not executed in compliance with our statutes on wills. Thus it is unnecessary to recognize the argument that this instrument was not a deed and was only testamentary in character and thus void.

Defendants urge that, even though the instrument was a deed in form, nevertheless the evidence establishes same was intended only as a mortgage. The basis of this argument is that plaintiff (Booker) produced a signed receipt for $200 loaned to the grantor; and, upon cross-examination the plaintiff testified this money was a loan, not given in payment for the deed, and that plaintiff took the deed for her own protection. Upon this basis defendants.

contend that under our statute, 46 O.S.1951 § 1, and our decisions involving this question, even though a deed is absolute upon its face, if taken as security for debt the instrument is nothing more than a mortgage, which must be foreclosed in order to vest the holder with title. See Fourth Nat. Bank v. Memorial Park, 181 Okl. 574, 75 P.2d 887; Edmundson v. State ex rel. Johnson, 181 Okl. 150, 73 P.2d 150.

■■ To give force to defendants' argument requires acceptance of their interpretation of the testimony upon this phase of the case, while disregarding other parts of plaintiffs' testimony. On cross-examination defendants' counsel made every effort to have plaintiff admit she took the deed as security for the money loaned grantor. Responding to counsel's questions plaintiff stated counsel was attempting to put words in her mouth. Plaintiff denied she took the deed for her own protection and stated grantor gave the deed in return for the kind deeds and services plaintiff had rendered to grantor and the daughter, Willie Graham. Nothing in the circumstances surrounding execution of the instrument indicated any intention same was to be treated as a mortgage. Plaintiff's loan of money as evidenced by grantor's receipt therefor, coupled with the answers plaintiff made on cross-examination and which she charged counsel with putting in her mouth, are the circumstances relied upon to establish the instrument was intended to be a mortgage. We adhere to the rule that one seeking to have an instrument, which upon its face is an absolute, unqualified conveyance of real property, declared to be a mortgage is upon the party asserting such fact. And, the evidence in such cases must be clear, unequivocal and convincing. Holly v. Holly, 174 Okl. 626, 51 P.2d 527; Miller v. Bush, 200 Okl. 465, 196 P.2d 692; Hill v. Hill, 202 Okl. 483, 215 P.2d 553. We are of the opinion the trial court correctly found that the conveyance under consideration was not intended as a mortgage.

Defendants' principal contention is that the instrument executed by the grantor was not a deed but rather was of a testamentary character since it did not attempt to pass grantor's interest until after her death. The instrument was drawn upon the customary printed form, and was prepared by a minister who also was a notary public.

Concerning execution of the instrument this witness testified that grantor and plaintiff came to see him about the transaction, and in response to grantor's request he prepared another deed which was mailed to a grandson in another state to be signed and returned. After this had been accomplished grantor and plaintiff returned and asked witness to prepare a deed. At that time grantor stated: "I want to fix this in a way that I will have the property as long as I live." The scrivener advised her this could be done and prepared the exception heretofore quoted. Upon further questioning he testified grantor stated that she wanted to fix the deed so the property would not pass to plaintiff until after her death. The instrument was drawn in this manner and was dated December 10, 1946. However, grantor did not execute the conveyance until December 24, 1946. Grantor, accompanied by plaintiff, thereafter recorded the deed in April 1947, which was upward of two years before grantor died.

Defendants' entire argument is to the effect the grantor's clear intention was that title was not to pass during her lifetime. Supporting this argument defendants rely upon Blackwell v. Lee, 160 Okl. 73, 15 P.2d 574, 576, wherein this court was called upon to determine whether a present title passed under a deed containing the following language:

"*Title to the above named land shall vest in the said John Lee until his death. The rents to go to the said John Lee, at my death full title to vest in the said Lizzie Lee Blackwell, together with all improvements thereon and the appurtenances thereunto belonging and warrant the title to the same.*"

Comparison of the language just quoted with the language used in the case before us reveals a great variance in the nature of the grant. In the Lee case, supra, the language used is susceptible of no interpretation other than that the grantor had no intention of parting with his property until his death. The reservation of a life

estate was not precisely stated, but was coupled with the grantor's attempted retention of title in himself until after death.

In the present case a vastly different situation is presented. The grantor conveyed an absolute, fee-simple title to plaintiff, subject to an existing mortgage, and with the unequivocal reservation of a life estate in herself. Then, apparently through overabundance of caution, and in an effort to satisfy grantor's instructions that she wanted to retain the property so long as she lived, the scrivener added the final clause which, by its conflicting and ambiguous expression, only served to provide the basis for this appeal.

Thus, as plaintiffs point out, an otherwise proper instrument became conflicting and ambiguous. An absolute estate in fee simple was conveyed to plaintiffs, and by the warranty clause the grantor clearly reserved a life estate in the property. To this point no conflict or ambiguity appears. However, the final clause purports to retain title in the grantor until her death. But, if no title passed then no estate had been conveyed out of which the grantor could retain an estate of any kind.

The question then seems to be as to what the grantor intended. Given the interpretation contended for by defendants the instrument is a nullity. Interpreting the conflicting provisions in a manner which gives effect to the language used as logically expressing the grantor's intention it appears certain, as she executed and delivered the deed to the grantees, that her intention was that she was conveying her property to plaintiffs, but with the clear understanding that she reserved a life estate therein and that the possession and enjoyment of the benefits of her property were not to be taken from her during her lifetime, the right to possession and use thereof not passing to plaintiffs until after her death.

█ In construing a deed of doubtful meaning a court's first duty is to ascertain the intention of the parties, particularly that of the grantor. Hampton v. Kessler, 193 Okl. 619, 145 P.2d 955, and cases therein cited. This is done, if possible,, from

terms of the deed itself, and in cases of uncertainty, from the surrounding facts and circumstances. Thoma v. Coats, 205 Okl. 688, 240 P.2d 736. Measured by the foregoing rules, a reasonable interpretation of the language used in the light of all the surrounding circumstances makes it clear the grantor intended a present grant of a fee-simple title to plaintiffs, with the reservation of a life estate in herself. This interpretation gives effect to the entire instrument, without giving undue preference to any particular part thereof and is consistent with the later acts of the parties in connection therewith. See White v. Wester, 170 Okl. 250, 39 P.2d 22.

Defendants further contend that it was reversible error for the trial court to introduce evidence tending to establish that the decree of the probate court whereby the grantor was determined to be the sole heir of Willie Graham was procured by fraud. Defendants offered to prove the grantor knew the whereabouts of her former husband at the time of the probate court's adjudication, and also that the defendant herein knew and kept track of the heirs and advised grantor of such facts. Defendants rely upon the rule heretofore announced in such cases as McIntosh v. Holtgrave, 79 Okl. 63, 191 P. 739, 740, wherein syllabus 4 states:

"A domestic judgment may be attacked in three ways:

"(a) * * *.

"(b) * * *.

"(c) By an equitable proceeding to set aside said judgment for fraud practiced by the successful party, said fraud inducing or entering into such order or judgment, where such fraud is extrinsic to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud."

█ We have consistently adhered to the rule that where a probate court having jurisdiction of settlement of an estate enters a decree of distribution, such decree is conclusive as to the rights of the parties interested, unless same is reversed or modified on appeal, and such decree is not subject to collateral attack. Wisel v. Terhune,

201 Okl. 231, 204 P.2d 286; Crane v. Howard, 206 Okl. 447, 244 P.2d 559.

▋▋ Upon consideration of the entire record we necessarily conclude that the judgment of the trial court is not clearly against the weight of the evidence, and the judgment therefore is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and DAVISON, O'NEAL and BLACKBIRD, JJ., concur.

WILLIAMS, J., dissents.

WILLIAMS, Justice (dissenting).

I am unable to agree with the treatment of the last proposition noted in the majority opinion. I believe the trial court should have permitted defendant, Mary Billingslea, to attack the final decree in the Willie Graham probate case. She alleged fraud in the procurement of such decree; if it is in fact void for fraud in its procurement, then Ida Williams never owned all of the lands herein involved and could not have given a valid deed thereto to plaintiffs, and this cause should be reversed and remanded for a new trial.

Defendant alleged and offered to prove that Ida Williams falsely represented to the county court that she (Ida Williams) was the sole heir of Willie Graham; that Sam Billingslea, father of Willie Graham, had been away from home and unheard of for more than seven years; that she did not know and could not with reasonable diligence ascertain his whereabouts; and that he should be presumed dead. Defendant further offered to prove that in truth and in fact Ida Williams knew that Sam Billingslea was not dead; that she and her children had kept in touch with him through the years and his address was either known or could have been ascertained by Ida Williams so that she, as administratrix, could have given him notice of the probate of his daughter's estate.

The majority opinion holds that since the final decree of the county court was not reversed or modified on appeal and has become final, it is not subject to collateral attack. With this I cannot agree.

See Brown v. Trent, 36 Okl. 239, 128 P. 895, 898, wherein the court said:

"* * * But an attack upon a judgment for fraud in its procurement is a direct attack over which courts of equity take jurisdiction, and no well-considered case can be found in which such jurisdiction is denied."

The applicable syllabus by the court in the above case was as follows:

"Where a petition, in a suit to quiet title to certain land, alleges that an order of court directing a guardian to sell land was procured by fraud, and prays to have the order of sale and subsequent orders approving the sale canceled, the suit is a 'direct attack' on the orders and not a 'collateral attack.' "

This holding was followed in the later case of McIntosh v. Holtgrave, 79 Okl. 63, at page 66, 191 P. 739. See also Cone v. Harris, 104 Okl. 114, 230 P. 721.

It is well settled that a judgment may be attacked for extrinsic fraud practiced by the successful party in obtaining the judgment. In the McIntosh case, supra, the court said:

"A domestic judgment may be attacked in three ways:

* * * * * *

"(c) By an equitable proceeding to set aside said judgment for fraud practiced by the successful party, said fraud inducing or entering into such order or judgment, where such fraud is extrinsic to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud."

In Sutton v. State ex rel. Selby, 86 Okl. 120, 206 P. 818, the court said:

"The frauds for which a court of equity will set aside a judgment or decree between the same parties, rendered by a court of competent jurisdiction, are frauds extrinsic or collateral to the matter tried by the first court, such as where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, *as by keeping him away from court,* a false promise of compromise or the like and not fraud

which was an issue in the former action." (Emphasis supplied.)

In the body of the opinion, the court quoted with approval the portion of the judgment in United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, from which the following excerpt is taken:

"But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact, no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court * * * *or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff* * *—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree". (Emphasis supplied.)

It can hardly be denied that there was no "real contest in the trial or hearing" of the Willie Graham probate case, insofar as Sam Billingslea was concerned, since he did not know of his daughter's death, was not served with notice of the probate of her estate, and did not appear at the trial.

The distinction between extrinsic and intrinsic fraud does not lend itself to exact definition, and the statement quoted above from the Sutton case is typical of most of the others contained in the pronouncements of the authorities and courts. The gist of most of these pronouncements is to the effect that extrinsic fraud means "some act or conduct of the prevailing party which has prevented a fair submission of the controversy." See Electric Plaster Co. v. Blue Rapids City Twp., 81 Kan. 730, 106 P. 1079, 1081; 25 L.R.A.,N.S., 1237; Kennedy v. Dickie, 34 Mont. 205, 85 P. 982; the concurring opinion of Marshall, J., in Boring v. Ott, 138 Wis. 260, 119 N.W. 865, 19 L.R.A.,N.S., 1080; Corney v. Corney, 79 Ark. 289, 95 S.W. 135, 116 Am.St.Rep. 80; Caldwell v. Taylor, 218 Cal. 471, 23 P. 2d 758, 88 A.L.R. 1201.

See also Pomeroy's Equity Jurisprudence, Fifth Edition, Vol. 2, sec. 919d, which reads in part:

"It may be stated as a general rule that where the action of the successful party in probate proceedings, in concealing or failing to disclose to the court the existence of a person interested in the estate, amounts to fraud of any kind, and the defrauded person has thereby been prevented from learning of the proceeding or asserting his claim therein, the fraud is such as to entitle the interested person to equitable relief against the decree of the probate court."

Assuming that the matters alleged in the offer of proof were true, Ida Williams falsely informed the court under oath that Sam Billingslea had been away from home and unheard of for a sufficient length of time to justify a finding that he was dead. As a result of such false representation, the court was led to make an incorrect determination as to who were the heirs of Willie Graham and Ida Williams was enabled to evade the requirements of the statute that Sam Billingslea be served with notice of the probate of his daughter's estate. I think this latter result (fraudulent withholding of notice to Sam Billingslea) was extrinsic fraud, since it was collateral to the main issue in the probate case (determination of the heirs of Willie Graham) and "prevented a fair submission of the controversy".

Considering the offer of proof in the above light, I believe the trial court should have recognized the offered evidence as a direct attack upon the judgment in the probate case based upon the alleged existence of extrinsic fraud in its procurement, and that his refusal to permit such an attack was reversible error.

I respectfully dissent.